UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
*In re Application of Orthogen International* :
*GmbH* : 24-MC-504 (VSB)
:
Petitioner, : **OPINION & ORDER**
:
for an order pursuant to 28 U.S.C. § 1782 to :
conduct discovery for use in a foreign :
proceeding. :
:
------------------------------------------------------------X

Appearances:

Christopher Blake Harwood
Matthew Garry
Morvillo Abramowitz Gran Iason & Anello
New York, New York
*Counsel for Petitioner*

Edward D. Altabet
Brach Eichler LLC
New York, NY
*Counsel for Proposed Intervenors Dr. Douglas Schottenstein and Schottenstein Pain and Neuro PLLC d/b/a NY Spine*

VERNON S. BRODERICK, United States District Judge:

      Applicant Orthogen International GmbH ("Applicant" or "Orthogen") filed this ex parte application (the "Application"), along with a memorandum of law and declarations in support, seeking discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782. (Docs. 9–12.) Specifically, Applicant seeks an order granting it the authority to serve subpoenas for certain records from Judith Capla ("Judith") and Tomas Capla ("Tomas" and with Judith "Judith and Tomas"). Orthogen intends to use these records in support of litigation in Germany in which it will allege claims based on underpayment of royalties in connection with certain license agreements (the "Contemplated German Proceeding"). Judith and Tomas have not opposed or

otherwise appeared in this action. Because Applicant has made a sufficient showing that the statutory elements of § 1782 are met and the discretionary factors identified in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), weigh in favor of granting the request, the Application is GRANTED.

Also before me is a motion to intervene filed by Dr. Douglas Schottenstein ("Dr. Schottenstein") and his practice, Schottenstein Pain & Neuro, PLLC d/b/a NY Spine ("NY Spine," together with Dr. Schottenstein, the "Schottenstein Parties"), which includes five proposed counterclaims. (Doc. 15.) For the reasons below, Dr. Schottenstein's motion to intervene is GRANTED, NY Spine's motion to intervene is DENIED, and the proposed counterclaims are DISMISSED.

I. **Factual Background**[1]

Orthogen is "a German biotech company that licenses its patented medical technology" to doctors globally through the "Regenokine Program." (Doc. 10 ("1782 Mem.") at 2.) The two licensees at issue here are Edward Capla—the son of Judith and Tomas Capla—and Dr. Schottenstein. (*Id.*) Pursuant to the Regenokine Program, Edward Capla regularly sent royalty reports to Orthogen regarding (1) "the number of Regenokine Program treatments that were administered" through NY Spine, and (2) the monetary amount "invoiced to/paid by patients in connection with such treatments." (*Id.*)

In December 2022, Dr. Schottenstein initiated an action in the Southern District of New York against, among others, Orthogen and Edward Capla for tortious interference, fraud, breach of contract, and other claims. (*Id.* at 3); *see Schottenstein v. Capla*, No. 22-CV-10883 (S.D.N.Y.

---

[1] The following is only a brief summary of background information contained in Applicant's Memorandum of Law in Support of Orthogen's § 1782 Application, to provide some context for this Opinion & Order. I make no findings of fact.

Dec. 27, 2022), ECF No. 1.   In that action (the "N.Y. Action")[2], Dr. Schottenstein's verified complaint included (1) a numerical figure of patient treatments administered by NY Spine that was "far higher" than what Edward Capla had regularly reported to Orthogen and (2) allegations that Dr. Schottenstein and Edward Capla had "each received millions of dollars more in connection with those treatments" than what Edward Capla had regularly reported to Orthogen. (*Id.*)  Dr. Schottenstein eventually filed two amended verified complaints in the N.Y. Action, both of which included similar allegations.  (*Id.*)  Through these verified complaints and the litigation in the N.Y. Action overall, Orthogen learned that Edward Capla and Dr. Schottenstein had defrauded Orthogen out of millions of dollars in royalty fees by underreporting both the number of treatments administered and the dollar amounts invoiced to or paid by patients in connection with those treatments.  (*Id.*)  Orthogen now seeks to bring a civil lawsuit regarding the underpayment of royalties in the Contemplated German Proceeding.

Prior to initiating the Contemplated German Proceeding, Orthogen sought to obtain more information and evidence, including through several § 1782 applications.  In May 2023, Orthogen filed a § 1782 petition against Dr. Schottenstein and NY Spine in this District, *see In re: Orthogen Int'l GmbH*, No. 23-MC-152 (S.D.N.Y. May 4, 2023), ECF No. 1 (the "Schottenstein 1782 Action"), which was assigned to me.  (*Id.* at 4.)  Separately, Orthogen filed a § 1782 petition in Florida against Edward Capla and his wife Yolanda Capla (the "Florida 1782 Action").  (*Id.*)

Orthogen separately obtained information from two former employees of Dr. Schottenstein and NY Spine, Pearl Chan and Derek Lee, during their April 3, 2024 interview

---

[2] On June 14, 2024, Judge P. Kevin Castel so ordered the Schottenstein Parties' voluntary dismissal of all claims against Orthogen.  Dismissal, *Schottenstein v. Capla*, No. 22-CV-10883 (S.D.N.Y. June 14, 2024), ECF No. 129.  The N.Y. Action remains ongoing.

with Orthogen's counsel. (*Id.* at 5.) That interview was conducted in the presence of Ms. Chan's and Mr. Lee's own counsel.[3] (*Id.*) In the interview, Ms. Chan and Mr. Lee stated that that Edward Capla had "created monthly handwritten ledgers" that they claimed show more patient treatments and more monetary amounts invoiced to or paid by patients compared to the regular reports Edward Capla sent to Orthogen. (*Id.*) According to Ms. Chan and Mr. Lee, those monthly handwritten ledgers indicated that "Judith and Tomas Capla sometimes received a portion of [Edward] Capla's share of those amounts paid." (*Id.*) After the interview, counsel for Ms. Chan and Mr. Lee provided Orthogen with various documents, including "copies of the handwritten ledgers for seven months, two of which reflect that Judith Capla received approximately one third of [Edward] Capla's share of the amounts paid." (*Id.*) Based in part upon the documents provided by Ms. Chan and Mr. Lee, Orthogen filed a § 1782 petition in Texas (the "Texas 1782").

## II. Procedural Background

On October 31, 2024, Applicant filed an ex parte application for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in the Contemplated German Proceeding, (Doc. 1), along with a memorandum of law and two declarations in support, (Docs. 5–7.) Orthogen also filed a statement of relatedness to the Schottenstein 1782 Action that was assigned to me. (Doc. 3.) On November 1, 2024, due to filing errors, Orthogen refiled its ex parte § 1782 application, (Doc. 9), along with a memorandum of law, (Doc. 10 ("1782 Mem.")), and two declarations in support, (Docs. 11–12). Specifically, Applicant seeks documents from Judith Capla and Tomas Capla, including those "identifying the full amount of [Edward] Capla's share of the unreported Regenokine Program income that was paid to Judith and Tomas Capla." (1782

---

[3] It appears as if Ms. Chan and Mr. Lee were represented by the same attorney.

Mem. 8.) These payments are "highly relevant to Orthogen's damages claims." (*Id.*) Because the requested discovery may contain information protected by the Health Insurance Portability and Accountability Act ("HIPAA"), Orthogen also attached a proposed HIPAA Order. (*See id.* at 18.) On November 6, 2024, this action was assigned to Judge J. Paul Oetken. The next day, on November 7, 2024, I accepted this case as related to the Schottenstein 1782 Action and it was re-assigned to me.

On December 31, 2024, the Schottenstein Parties moved to intervene. (Doc. 15.) Schottenstein's motion to intervene asserted five counterclaims against Orthogen. (*See* Doc. 15-2 ("Intervention Plea") at 21–27.) On January 28, 2025, Orthogen filed an opposition brief and a supporting declaration. (Docs. 18–19.) Applicant "does not object to the Schottenstein Parties intervening in order to participate in any discovery that this Court authorizes," but objects to their request to interpose the proposed counterclaims. (Doc. 18 ("Opp'n") at 1.) On February 18, 2025, the Schottenstein Parties filed a reply brief. (Doc. 20 ("Reply").) On February 24, 2025, Orthogen filed a letter-motion for a conference in anticipation of a motion to expedite a decision in the Schottenstein 1782 Action and the instant action. (Doc. 21.)

To date, Judith Capla and Tomas Capla have not opposed the § 1782 application or otherwise appeared in this action. Nor have they appeared in the Schottenstein 1782 Action.

### III.   Discussion

The instant action currently has two pending requests: (1) Orthogen's § 1782 application to which Judith and Tomas Capla have not objected, and (2) the Schottenstein Parties' fully briefed motion to intervene. I address each in turn.

### A. *Applicable Law*

#### 1. Section 1782

Section 1782 contains three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (cleaned up)).

"Once the statutory requirements are met, a district court may order discovery under § 1782 in its discretion, taking into consideration the twin aims of the statute, namely, providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (internal quotation marks omitted). "The Supreme Court has identified four" factors—the so-called "*Intel* factors"—that are relevant to a district court's discretion under § 1782:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."

*Mangouras*, 980 F.3d at 97–98 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004) (cleaned up)).

#### 2. Motion to Intervene

Under Rule 24(a) of the Federal Rules of Civil Procedure, a court is required to allow

6

intervention of a party that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

### B. *Application*

#### 1. Section 1782

##### a. The § 1782 Statutory Requirements

The statutory requirements of Section 1782 are met here. First, Judith and Tomas Capla "reside" in this District. An individual resides or is found in a district if they are subject to personal jurisdiction of a court in that district. *See In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019) ("[T]he statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process."). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks omitted). Orthogen avers that Judith and Tomas Capla's primary residence is in the Bronx, New York, (1782 Mem. 21), so they reside in this District. Accordingly, the first § 1782 statutory requirement is met.

Second, the requested § 1782 discovery is for "use in a proceeding before a foreign tribunal." *KPMG*, 798 F.3d at 117. The Supreme Court has stated that the foreign proceeding need only to be within "reasonable contemplation" to satisfy the second statutory requirement. *Intel*, 542 U.S. at 259. The Schottenstein Parties argue, in their fourth proposed counterclaim, that "[a] hypothetical litigation within the subjective contemplation of a private foreign citizen and its attorneys" is insufficient. (Intervention Plea ¶ 123.) This argument fails.

The Second Circuit requires more than "a twinkle in counsel's eye" of anticipated

litigation, and instead requires that the § 1782 applicant provide "some objective indicium" or "concrete basis" that there is reasonable contemplation of the foreign proceeding. *KPMG*, 798 F.3d at 123–24. Orthogen proffers the following "objective indicium": (1) the retainer of German counsel, (2) substantial evidence that would support Orthogen's claims for breach of contract and fraud in the Contemplated German Proceeding, (3) German counsel's declaration that it will initiate the Contemplated German Proceeding, and (4) other "concrete steps" Orthogen has taken, including "drafting the pleadings and adjusting them based on the evidence obtained to date." (1782 Mem. 21–22.) Courts in this District have found the "reasonable contemplation" standard satisfied in similar circumstances where the petitioner retained foreign counsel, had "begun preparing the necessary pleadings for the petition," had "set forth a theory" of the underlying claims, and "provided declarations expressing an intent to initiate" subsequent proceedings. *In re Kuwait Ports Auth.*, No. 20-MC-00046, 2021 WL 5909999, at *8 (S.D.N.Y. Dec. 13, 2021) (finding second statutory requirement was met); *see also In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 249 (S.D.N.Y. 2018) (same).

Third, Orthogen demonstrates that it is an "interested person" because it will be the plaintiff in the Contemplated German Proceeding. *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested persons' who may invoke § 1782." (internal quotation marks omitted and alterations adopted)).

Accordingly, the Application meets the three statutory requirements.

b. The Discretionary *Intel* Factors

The statutory requirements having been met, I next consider whether the discretionary *Intel* factors counsel in favor of § 1782 discovery. *See Mees*, 793 F.3d at 297–98 (citing *Intel*, 542 U.S. at 264–65). Judith and Tomas Capla have not appeared in this matter to argue that the

*Intel* factors do not favor § 1782 discovery.  I find that, on balance, the *Intel* factors weigh in favor of granting the § 1782 application.

The first *Intel* factor easily weighs in favor of the Applicant.  Orthogen expressly stated that "Judith and Tomas Capla will not be parties to the Contemplated German Proceeding." (1782 Mem. 23.)  *See Intel*, 542 U.S. at 264 (explaining that the first factor favors discovery if person or entity from whom discovery is sought will be a non-party to foreign proceeding).

The second *Intel* factor also weighs in favor of granting the Application.  "In this Circuit, this factor requires consideration of 'only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782.'"  *In re Polygon Glob. Partners LLP*, No. 21-MC-364, 2021 WL 2117397, at *8 (S.D.N.Y. May 25, 2021) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)); *accord Mees*, 793 F.3d at 303 n.20.  The Schottenstein Parties fail to present any authoritative proof that the relevant German courts would reject the discovery.  In fact, Orthogen's German counsel declares "that he (i) is 'not aware of any German laws or restrictions that would preclude Orthogen from seeking or obtaining through Section 1782 the discovery it seeks here,' and (ii) has no 'reason to believe that a German court would reject or otherwise decline to consider the [discovery].'"  (1782 Mem. 23 (quoting Doc. 12 ("Kruger Decl.") ¶ 46).)  *See In re Roessner,* No. 21-MC-513, 2021 WL 5042861, at *3 (S.D.N.Y. Oct. 29, 2021) (relying on the attestation of petitioner's German counsel and finding no "authoritative proof that the German Court would reject Section 1782 assistance" (cleaned up)).

The third *Intel* factor is neutral.  On the one hand, although the discovery sought would not be available in Germany, "[c]ourts routinely grant § 1782 applications where the discovery sought might not be available in the foreign legal system, but [as here] is not explicitly

9

prohibited from being acquired by way of a § 1782 application." *In re Tiberius Grp. AG*, No. 19-MC-467, 2020 WL 1140784, at \*5 (S.D.N.Y. Mar. 6, 2020); *see id*. (collecting cases). Applicant has demonstrated that the discovery sought is relevant and there is no reason that the German court would reject it, so there is an argument that the third factor weighs in favor of discovery.

On the other hand, the Schottenstein Parties' arguments regarding the forum-selection clause, assuming they are accurate, weigh against discovery. The Schottenstein Parties aver that Orthogen's numerous § 1782 actions in the United States constitute a "willful attempt to evade" the forum-selection clause, (Intervention Plea ¶ 100), ostensibly within the realm of the third *Intel* factor. It is true that a forum-selection clause can be a factor that weighs against § 1782 discovery. *See, e.g*, *Klein v. Altara RK Invs. Ltd.*, No. 24-228-CV, 2025 WL 560105, at \*3 (2d Cir. Feb. 20, 2025) (summary order). However, the existence of a forum-selection clause does not categorically foreclose all foreign discovery. *Id.* Therefore, the weight of a forum-selection clause depends on the facts of each case. *See, e.g.*, *In re Bm Brazil 1*, No. 23-MC-208, 2024 WL 555780, at \*13 (S.D.N.Y. Jan. 18, 2024) ("[F]orum selection clauses are neither dispositive nor irrelevant."), *report and recommendation adopted*, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024); *In re Ativos Especiais II*, No. 24-MC-119, 2024 WL 4169550, at \*14 n.10 (S.D.N.Y. Sept. 12, 2024) ("The Court places no weight on the forum-selection clause.").

Here, I need not delineate exactly when a forum-selection clause weighs in favor of or against § 1782 discovery. Nor do I need to find whether the forum-selection clause here supports the arguments made by either Orthogen or the Schottenstein Parties. As an initial matter, the parties do not dispute that Judith and Tomas Capla are not parties to the license agreements that contain the forum-selection clause at issue. In any event, assuming in the

10

Schottenstein Parties' favor that the forum-selection clause counsels against such discovery, the third *Intel* factor is only one out of four "non-exclusive factors." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018). Because I find that Orthogen prevails in establishing the other three *Intel* factors, the third factor, assuming it weighs in the Schottenstein Parties' favor, is not dispositive.

The final *Intel* factor also supports granting the Application. The requested discovery is not unduly intrusive or burdensome and the Schottenstein Parties do not argue otherwise. The subpoenas that the Applicant proposes "are focused on matters central to Orthogen's anticipated claims," including payments that Judith and Tomas Capla received and other information related to the Regenokine Program and the underlying claim. (1782 Mem. 25.) Indeed, the proposed subpoenas request only documents related to the Regenokine Program, further indicating a narrowly tailored discovery request. (*See* Docs. 10-2 (proposed Judith Capla subpoena), 10-3 (proposed Tomas Capla subpoena).)

On balance, the *Intel* factors weigh in favor of granting the Application. Orthogen's § 1782 application is therefore GRANTED.

### 2. Motion to Intervene

#### a. Intervention

Dr. Schottenstein and NY Spine jointly move to intervene of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. (*See* Doc. 15-1.) Orthogen does not oppose the Schottenstein Parties' intervention "in order to participate in any discovery" in this action. (Opp'n 1.)[4] In the § 1782 context, the "ultimate targets" of a § 1782 petition and/or "a party against whom the requested information is to be used [each] has standing to challenge the

---

[4] The Schottenstein Parties do not request reciprocal discovery.

11

validity of such a subpoena on the ground that it is in excess of the terms of . . . § 1782." *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (internal quotation marks omitted). I therefore grant Dr. Schottenstein's motion to intervene, because the requested discovery will be used against him in the Contemplated German Proceeding. *In re Bourlakova*, No. 24-MC-71, 2024 WL 4839047, at *2 (S.D.N.Y. Nov. 20, 2024) (granting unopposed motion to intervene because requested discovery would be used against proposed intervenors in foreign proceeding).

In contrast, Orthogen states that NY Spine will not be a party to the Contemplated German Proceeding. (Opp'n 19 n.14.) Therefore, NY Spine is not among the "ultimate targets" of the Contemplated German Proceeding to confer standing, so its motion to intervene must fail. *Cf. Sarrio*, 119 F.3d at 148. NY Spine's motion to intervene also fails because its proposed counterclaims, which it shares with Dr. Schottenstein, are denied as futile.[5] *Cf. In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, No. 02-CV-8472, 2008 WL 2594819, at *13 (S.D.N.Y. June 26, 2008) (denying motion to intervene because intervenor's claims are futile).

      b. <u>Proposed Counterclaims</u>

           i. *An Intervenor's Right to File Counterclaims in a § 1782 Action.*

At the outset, it is unclear whether an intervenor can file counterclaims in a § 1782 proceeding. The Schottenstein Parties declare their right to assert these compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure because they "all arise in connection with Orthogen's breach of" the forum-selection clause of the underlying license agreement. (Reply 3.) However, neither party cites any case law holding that an intervenor in a § 1782 action can assert compulsory counterclaims against the petitioner. Nor have I found any.

---

[5] *See infra* § III.B.2.b (regarding proposed counterclaims).

12

For the purposes of this Opinion & Order, I assume, without deciding, that they apply and that the Schottenstein Parties can assert counterclaims, and I turn to the merits of the counterclaims.[6]

### ii.     *The Schottenstein Parties' Counterclaims*

I now turn to the Schottenstein Parties' five proposed counterclaims.  First, the Schottenstein Parties assert a breach-of-contract claim regarding the forum-selection clause. (Intervention Plea ¶¶ 101–107.)  Second, the Schottenstein Parties assert, in the alternative, a counterclaim for declaratory judgment that Orthogen waived any arguments regarding the forum-selection clause.  (*Id.* ¶¶ 108–111.)  Third, the Schottenstein Parties assert a counterclaim for dismissal of the Application under the doctrine of forum non conveniens and *Atlantic Marine Construction Co., Inc. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49 (2013).  (*Id.* ¶¶ 112–122; *see also* Reply 7–11.)  Fourth, the Schottenstein Parties assert a claim for dismissal of the Application for failure to satisfy the second statutory requirement of § 1782. (Intervention Plea ¶¶ 123–132.)  Fifth, Schottenstein Parties assert a claim under the Equal Protection Clause of the Constitution.  (*Id.* ¶¶ 133–142.)

---

[6] I note several points regarding the unresolved issue of whether an intervenor can assert compulsory counterclaims against the petitioner in a § 1782 action.  First, the statute's reference to the Federal Rules of Civil Procedure is limited to the manner in which "the testimony or statement shall be taken, and the document or other thing produced."  28 U.S.C. § 1782(a); *see also In re Application of Republic of Ecuador*, 280 F.R.D. 506 (N.D. Cal. 2012) (applying Rule 26 to deposition sought under § 1782), *aff'd sub nom. Republic of Ecuador v. Mackay*, 742 F.3d 860 (9th Cir. 2014).  Nowhere in the statute, or any case law that I can find, does it state that § 1782 actions are governed by the Federal Rules more broadly, including Rule 13's governance of counterclaims.  Second, the nature of a counterclaim is a claim that a defendant has against a plaintiff in litigation.  *See, e.g. Counterclaim*, Black's Law Dictionary (12th ed. 2024) ("[C]ounterclaim n. (18c) A claim for relief asserted against an opposing party after an original claim has been made.").  It is not clear that a § 1782 action, which is a discovery tool for assistance in litigation in foreign proceedings, is the type of action where a counterclaim plays the same role compared to other civil suits where claims are adjudicated and relief is rewarded.  Intervenors have been permitted to assert counterclaims outside of the § 1782 context when their rights are more directly affected by the underlying litigation. *See, e.g.*, *Fredericks v. Shapiro*, 160 F.R.D. 26, 27–28 (S.D.N.Y. 1995) (permitting intervenor's counterclaims because he was "the primary obligor on the alleged debt and a party indirectly liable for plaintiff's claim if upheld"). It is not clear that the Schottenstein Parties are so directly affected by this § 1782 action that they can file counterclaims as intervenors.

### iii.  *The Proposed Counterclaims are Futile.*

All five proposed counterclaims fail.  As an initial matter, the Schottenstein Parties are precluded from asserting the first and second proposed counterclaims because they failed to raise those arguments in the related Schottenstein 1782 Action.  *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (explaining that compulsory counterclaim are "forfeited" if not previously asserted).  Even if these arguments were not forfeited, I have already addressed the relevance of the forum-selection clause in the § 1782 context, not just in this action,[7] but also in the related 1782 Schottenstein Action[8] where the Schottenstein Parties stand as Respondents.  Accordingly, the first and second proposed counterclaims are rejected.

The third proposed counterclaim is essentially an argument regarding the *Intel* discretionary factors.  (Intervention Plea ¶¶ 5–6.)  Indeed, this counterclaim is not really a "claim," but a request for dismissal of the Application.  (*Id.* ¶ 121.)  The Schottenstein Parties argue that the forum-selection clause, under *Atlantic Marine*, "materially impacts how *Intel*'s discretionary factors may be applied."  (*Id.* ¶ 118.)  Respondents argue that the "*Intel* factors must be 'adjusted'" in light of *Atlantic Marine*.  (*Id.* ¶ 5.)

The Schottenstein Parties' reliance on *Atlantic Marine* is misplaced.  In that case, the Supreme Court held that a party may enforce a forum-selection clause through a motion to transfer, and not through a motion to dismiss based on a "wrong" venue under 28 U.S.C. § 1406(a) or "improper" venue under Federal Rule of Civil Procedure 12(b)(3).  *Atl. Marine*, 571 U.S. at 55.  The Court held that, in evaluating a transfer motion based on a forum-selection clause, "a district court may consider arguments about public-interest factors only," *id*. at 64,

---

[7] *See supra* § III.B.1.b (recognizing the forum-selection clause to be relevant but not dispositive to the *Intel* analysis).

[8] *See In re: Orthogen Int'l GmbH*, No. 23-MC-152, Doc. 40 (S.D.N.Y. Apr. 30, 2025).

14

including "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law," *id.* at 63 n.6 (internal quotation marks omitted).

It is unclear how *Atlantic Marine* applies in the § 1782 context, or how it supports the Schottenstein Parties. First, *Atlantic Marine* never references § 1782, and the Schottenstein Parties fail to cite any case law, let alone any in the Second Circuit, applying *Atlantic Marine* in the § 1782 context, despite the fact that *Atlantic Marine* was decided over a decade ago in 2013. Nor do the Schottenstein Parties demonstrate how the Supreme Court's narrow holding, regarding the procedural mechanism for challenging venue based on a forum-selection clause, applies in a § 1782 request for discovery for use in a foreign proceeding. Moreover, even if *Atlantic Marine* applied here, the Schottenstein Parties fail to establish how the public factors warrant dismissal of the Application. The Schottenstein Parties essentially request that the public-factor analysis under *Atlantic Marine* replace the *Intel* factors entirely and categorically preclude all § 1782 discovery if a forum-selection clause exists. I have already declined to hold that the forum-selection clause dictates such an outcome, and have already addressed *Atlantic Marine*. I have already found that the *Intel* factors, on balance, weigh in favor of discovery.[9] Because this argument has already been rejected, the third proposed counterclaim is rejected.

The fourth proposed counterclaim alleges that the second statutory requirement of § 1782 is not met. (Intervention Plea ¶ 123.) I have already found that the Application satisfied the second statutory requirement of § 1782,[10] so this counterclaim is likewise rejected as futile.

---

[9] *This* argument was also already raised in and rejected by me in the Schottenstein 1782 Action.

[10] *See supra* § III.B.1.a. This argument was also already raised in and rejected by me in the Schottenstein 1782 Action.

15

Finally, the fifth proposed counterclaim is an as-applied challenge to the § 1782 application under the Equal Protection Clause because it arbitrarily and unfairly gives pre-suit subpoena power to those contemplating litigation in a foreign tribunal compared to those contemplating litigation in a federal court. (Intervention Plea ¶ 137.) According to the Schottenstein Parties, this classification "cannot survive rational basis scrutiny" because it "gives completely unequal access to Rule 45" of the Federal Rules of Civil Procedure. (*Id.* ¶ 141.)

As an initial matter, the fifth proposed counterclaim is also "forfeited" because the Schottenstein Parties failed to present this constitutional challenge in the Schottenstein 1782 Action. However, even if the challenge were not forfeited, it would fail on the merits.

The fifth proposed counterclaim is doomed under rational-basis review, which the Schottenstein Parties concede is the applicable standard. (*Id.* ¶ 141 ("This classification . . . cannot survive rational basis scrutiny.").) Under the rational-basis test, the challenged law will be "upheld 'so long as it bears a rational relation to some legitimate end.'" *Clementine Co., LLC v. Adams*, 74 F.4th 77, 89 (2d Cir. 2023) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)). The Supreme Court has long recognized that § 1782's "twin aims" are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252 (internal quotation marks omitted); *see also ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022) ("[T]he animating purpose of § 1782 is comity."). Allowing pre-suit discovery for use in a foreign proceeding under § 1782 clearly "bears a rational relation" to that end.

The Schottenstein Parties argue that the logic of *ZF Automotive* applies here. (Intervention Plea ¶ 141.) In *ZF Automotive*, the Supreme Court engaged in statutory interpretation and held that private arbitrations do not constitute "foreign or international

16

tribunals" under 28 U.S.C. § 1782.  596 U.S. at 623.  To rule otherwise would create "significant tension with the [Federal Arbitration Act]," as well as "a notable mismatch between foreign and domestic arbitration" because "§ 1782 permits much broader discovery than the FAA allows." *Id.* at 632.  The Supreme Court had difficulty rationalizing "'giving parties to private foreign arbitrations such broad access to federal-court discovery assistance in the United States while precluding such discovery assistance for litigants in domestic arbitrations.'"  *Id.* at 633 (quoting *Servotronics, Inc. v. Rolls-Royce PLC*, 975 F.3d 689, 695 (7th Cir. 2020)).

The Schottenstein Parties seek to improperly extend *ZF Automotive* here.  For one, they fail to cite to any other federal statute that would face "significant tension" with a ruling that allows pre-suit § 1782 discovery.  *Id.* at 632.  For another, *ZF Automotive* does not stand for the broad proposition that the scope of permitted discovery under § 1782 must be identical to that permitted in federal proceedings in the United States.  *ZF Automotive* relied on an analysis of the word "tribunal" to be "best understood as an adjudicative body that exercises governmental authority."  *Id.* at 628.  The Schottenstein Parties offer no explanation why *ZF Automotive*, which involved private arbitration proceedings abroad, should apply to this action which involves an anticipated proceeding before governmental courts in Germany.  Moreover, the Schottenstein Parties' overly broad reading of *ZF Automotive* would add a new requirement to the § 1782 analysis, one that must be satisfied before the *Intel* factors come into play.  According to the Schottenstein Parties, a § 1782 applicant must establish that the discovery it seeks does not create a classification that provides any unequal access between the applicant and a litigant who seeks discovery in the federal courts in the United States.  I decline to add such a requirement here.

The Schottenstein Parties fail to overcome the "strong presumption of validity" accorded

to the challenged law, and utterly fails to bear "the burden to negate every conceivable basis which might support it." *United States v. Amalfi*, 47 F.4th 114, 124–25 (2d Cir. 2022) (emphasis omitted). For example, allowing pre-suit discovery may facilitate more efficient litigation abroad, which may encourage pre-suit discovery abroad that facilities more efficient litigation in the United States. The Schottenstein Parties fail to address, let alone negate, any conceivable basis that Congress may have had in permitting pre-suit discovery in a § 1782 action. The Schottenstein Parties are prohibited from "second-guessing Congress's 'wisdom, fairness, or logic of legislative choices,'" and fail to overcome the "extremely deferential standard" that is rational-basis review. *Id.* at 125 (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)).

In sum, all five of the Schottenstein Parties' proposed counterclaims fail and are rejected as futile. The first, second, and fifth compulsory counterclaims were "forfeited" because the Schottenstein Parties failed to make those arguments in the Schottenstein 1782 Action. The arguments underlying the third and fourth compulsory counterclaims have already been rejected in this Opinion & Order. All five proposed counterclaims also fail on the merits. Accordingly, all five proposed counterclaims are DISMISSED.

## IV. Conclusion

Applicant's request for an order pursuant to 28 U.S.C. § 1782 is GRANTED. Accordingly, it is hereby:

ORDERED that Applicant is authorized to serve Judith Capla and Tomas Capla with the subpoenas annexed to Applicant's Memorandum of Law, (Doc. 10), as Exhibit A.

IT IS FURTHER ORDERED that Applicant's HIPAA Order, annexed to Applicant's Memorandum of Law, (Doc. 10), as Exhibit D, is authorized. I will issue the HIPAA Order simultaneously with the filing of this Opinion & Order.

IT IS FURTHER ORDERED that Judith Capla and Tomas Capla shall comply with subpoenas served pursuant to this Order in accordance with the Federal Rules of Civil Procedure, the Local Rules, and my Individual Rules, including with respect to their rights to object to or move to quash any such subpoena.

IT IS FURTHER ORDERED that Dr. Schottenstein's motion to intervene is GRANTED.  However, Dr. Schottenstein's proposed counterclaims are DISMISSED.

IT IS FURTHER ORDERED that NY Spine's motion to intervene is DENIED.

The Clerk of Court is respectfully directed to terminate Document 9 (the § 1782 Petition), Document 15 (motion to intervene), and Document 21 (letter-motion for conference).

SO ORDERED.

Dated:  April 30, 2025
       New York, New York

       Vernon S. Broderick
       United States District Judge