# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

charwood@maglaw.com
212-880-9547

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***

RETIRED/PARTNER EMERITUS
PAUL R. GRAND

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

August 8, 2025

**By ECF**
Honorable Vernon S. Broderick
United States District Judge

      Re:    *In re Orthogen International GmbH*, No. 1:24-mc-00504-VSB;

Dear Judge Broderick:

      I represent Orthogen International GmbH ("Orthogen") in the above-referenced proceeding in which, pursuant to a Decision and Order dated April 30, 2025 (Dkt. 23), Your Honor authorized Orthogen to issue subpoenas (the "Subpoenas") to Judith and Tomas Capla (the "Caplas"), under 28 U.S.C. § 1782, to obtain documents and testimony for use in a proceeding that Orthogen will be filing in Germany. Pursuant to Rules 3 and 4(A) of Your Honor's Individual Rules, I respectfully submit this letter to request a pre-motion conference in anticipation of filing a motion to compel compliance with the Subpoenas. Counsel to the Caplas, Jason Mizrahi of the firm Levin-Epstein & Associates, and I have had multiple meet-and-confers concerning the Subpoenas (described below), and pursuant to Individual Rule 3, I provide below (i) in Part A, Orthogen's portion of this joint letter, and (ii) in Part B, the Caplas' portion.

      **A.  Orthogen's Portion of the Letter**

      On May 6, 2025, Tomas Capla accepted service of the Subpoenas on behalf of himself and Judith Capla (his wife). The Subpoenas called for the Caplas to produce documents by May 23 and to appear for a deposition on June 17 (Tomas Capla) and June 18 (Judith Capla). A letter accompanying the Subpoenas advised the Caplas to contact me (either directly or, if they retained counsel, through counsel) to discuss potential alternative dates to the extent that the designated production deadline and deposition dates were inconvenient. On May 22, 2025 (the day before the deadline for the Caplas to produce documents), Peter Gordon, who was then counsel to the Caplas' son, Edward Capla, in a lawsuit in this district, left me a voicemail asking to speak.[1] Mr. Gordon and I spoke on May 23, and he told me that he had been asked by Judith

---

[1] The referenced lawsuit is *Schottenstein v. Capla*, No. 22-cv-10883-PKC (S.D.N.Y.). On May 5, 2025 (the same day I arranged for the Subpoenas to be served on Judith and Tomas Capla), I emailed the Subpoenas to Mr.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Capla potentially to assist with the Subpoenas, and we agreed to speak again on May 27. On May 27, Mr. Gordon informed me by email that he would not be representing Judith or Tomas Capla, and that he had referred the Caplas to another attorney.

On May 29, 2025, Mr. Mizrahi reached out to me, and we spoke by videoconference. Mr. Mizrahi told me that his firm was being retained to represent Judith Capla in connection with the Subpoenas, but he did not know if his firm would be representing Tomas Capla. He also said he was not in a position to tell me if either of the Caplas intended to comply with the Subpoenas by producing responsive documents or sitting for the noticed depositions. I noted that the Caplas already had missed their production deadline, and I asked that he be prepared on our next call to tell me (i) if he was representing Tomas Capla, and assuming so, (ii) if the Caplas intended to comply with the Subpoenas. We agreed to schedule a follow-up call for June 3, but then rescheduled for June 4 at Mr. Mizrahi's request. When we spoke on June 4, Mr. Mizrahi said that his firm would be representing both Judith and Tomas Capla (they also have since taken over representing Edward Capla in the matter identified in footnote 1), but Mr. Mizrahi stated he still was not in a position to tell me if the Caplas intended to comply with the Subpoenas by producing responsive documents or sitting for the noticed depositions (or any other substantive information about how they would be addressing the Subpoenas). I said that I would extend the Subpoenas' document production response date to June 11, 2025, but that by then I needed to understand whether the Caplas intended to comply with the Subpoenas, including to understand whether a motion to compel would be necessary. We scheduled a follow-up call for June 11.

On June 10, 2025, Mr. Mizrahi emailed saying that he needed to cancel the June 11 call and asked for my availability to speak on June 12 or 13. That same day, I emailed Mr. Mizrahi back with my availability on June 12. Receiving no response, on June 12 I emailed Mr. Mizrahi again, proposing times to speak on June 13. Mr. Mizrahi again did not respond. Having heard nothing, on June 25, I sent Mr. Mizrahi a pre-motion letter to compel and, per this Court's rules, requested his portion of the letter within 72 hours. After not responding to emails for two weeks, two minutes after I sent the email with the pre-motion letter, Mr. Mizrahi responded asking for another meet-and-confer. During that meet and confer, which took place on June 27, Mr. Mizrahi said that his clients would respond to the Subpoenas by July 11. On July 11, Mr. Mizrahi requested a one-week extension, which I granted. On July 18, Mr. Mizrahi served responses and objections only on behalf of Judith Capla. Therein, after asserting numerous objections, Judith Capla disclaimed possessing any documents responsive to most of the requests — *i.e.*, all of the requests other than those seeking documents reflecting payments in connection with Orthogen's Regenokine Program. With respect to documents reflecting such payments, Judith Capla claimed that they "are no longer electronically available because it has been more than three (3) years since these payments were issued [by Dr. Schottenstein]," but she then went on to represent that she "received a check [from Dr. Schottenstein], approximately every month [between 2015-2020], in irregular, fluctuating amounts," and "estimate[d] that she received approximately

---

Gordon—in his capacity as counsel to Edward Capla—as well as to counsel for Dr. Douglas Schottenstein, because (i) Edward Capla and Dr. Schottenstein will be the defendants in the German lawsuit underlying this 1782 proceeding, and (ii) the discovery sought is for use in connection with that lawsuit.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

$200,000 per year."

During a meet-and-confer with Mr. Mizrahi on July 23, I told him that documents obtained in a related 1782 reflected that Judith Capla had received substantially more than $200,000 per year in Regenokine payments. For example, for the 12-month period from September 2018 to August 2019, the subjects of that related 1782 produced four checks issued to Judith Capla (dated September 2018, November 2018, January 2019, and May 2019) totaling $231,062.73, plus a ledger we understand was prepared by Edward Capla for June 2019 reflecting a payment to Judith Capla of another $92,191.24. For just those five months, Judith Capla apparently received $323,253.97, meaning that over 12 months, she would have received multiples of the $200,000 she represented in her responses and objections. Based on that apparent underrepresentation (as well as the fact that records of what the Caplas were paid would presumably be available through bank records, records maintained by their accountant, or other sources), I stated that Orthogen would insist on a formal collection and production. Mr. Mizrahi declined to offer any details regarding his efforts to date to collect responsive documents, and suggested that such a discussion be deferred until Tomas Capla (whom Mr. Mizrahi said was suffering from serious health issues) responded to his Subpoena. I consented, but said that given the significant delays thus far, I would need Tomas Capla's response by Friday, August 1, or I would renew my efforts to bring a motion to compel.[2] To date, I have not received Tomas Capla's response, or any further correspondence from Mr. Mizrahi. As I mentioned to Mr. Mizrahi, Orthogen is not opposed to the Caplas beginning their collection/production with documents sufficient to identify the payments they received from Dr. Schottenstein/his medical practice. Nor is Orthogen opposed to discussing the possibility of covering the Caplas' reasonable expenses in collecting/producing responsive documents, but discussing such matters now would be premature because Mr. Mizrahi has declined even to discuss their collection protocol, and has caused Orthogen unnecessary expense in pursuing subpoena compliance.

I provided notice of the Subpoenas to counsel for Dr. Schottenstein and Edward Capla on the same date I arranged for them to be served on the Caplas. Dr. Schottenstein and his medical practice (collectively, the "Schottenstein Parties") filed a motion to intervene in this 1782 proceeding in which they raised various challenges to Orthogen's 1782 petition and sought to interpose counterclaims against Orthogen for having filed it. In an opinion and order dated April 30, 2025, this Court (i) granted Dr. Schottenstein's motion to intervene, (ii) denied his medical practice's motion to intervene, (iii) rejected the Schottenstein Parties' challenges to Orthogen's 1782 petition, and (iv) denied the Schottenstein Parties' leave to pursue the counterclaims as futile. The Schottenstein Parties appealed, *see* Dkt. 24, and Orthogen expects they also will move to stay discovery and quash the Subpoenas in response to Orthogen's anticipated motion to compel here. This Court referred matters relating to Orthogen's motion to compel against the Schottenstein Parties to Magistrate Judge Parker, before whom they are currently pending.

---

[2] Orthogen of course is willing to accommodate Tomas Capla's health issues, but in the meantime, his lawyers presumably can serve responses and objections to his Subpoena and begin an appropriate document collection.

3

Morvillo Abramowitz Grand Iason & Anello P.C.

### B. The Caplas' Portion of the Letter

Orthogen presents a deeply misleading narrative that selectively omits the factual and procedural context behind the Caplas' good-faith efforts to engage in discussions with Orthogen's counsel and respond appropriately to the subpoenas.

First, Respondent Judith Capla timely served formal Responses and Objections to the subpoena duces tecum on July 18, 2025 – as agreed to in writing by and between the parties. Orthogen now claims these responses were insufficient, yet fails to identify with any specificity how the objections were deficient or what categories of documents it believes were improperly withheld. Instead, Orthogen merely speculates – based on unsubstantiated allegations from counsel regarding an unrelated, foreign, 1782 proceeding[3] – that Ms. Capla's estimates regarding historical payments must be inaccurate. Such speculation does not justify a motion to compel, particularly when Ms. Capla's bank has expressly stated that the relevant documents are no longer electronically available due to the passage of time.

Second, the Caplas' counsel has repeatedly informed Orthogen that Tomas Capla has been facing serious and ongoing health issues, which have materially affected his ability to participate in this process. Tomas Capla's medical ailments were communicated to Orthogen in good faith and should have been met with professional courtesy – not as a basis for litigation threats or accusations of stonewalling. To date, counsel continues to work with Mr. Capla to gather responsive information and will serve formal responses as soon as practicable. Notably, Orthogen has never provided the Caplas with any explanation for its refusal to prioritize the collection of discrete and easily identifiable financial records (to the extent that any such records exist) – despite counsel's willingness to discuss the scope and sequencing of production, and to explore reasonable cost-sharing measures.

Third, contrary to Orthogen's characterization, counsel for the Caplas has engaged in at least six (6) separate meet-and-confers over the past ten weeks, and at no point has Orthogen provided a detailed protocol for what it believes constitutes adequate compliance. Instead, it has issued general demands for full compliance while refusing to engage in a targeted, proportional, and collaborative approach. That is not the standard under Rule 45 or § 1782, and the Court should not permit Orthogen to use this forum as a vehicle to impose burdensome discovery obligations on two (2) elderly individuals without first attempting to resolve disputes in good faith.

Accordingly, Respondents respectfully request that, should the Court deny Orthogen's request for a pre-motion conference[4], to allow Mr. Capla sufficient time to meet-and-confer with their counsel, to respond to Orthogen's subpoena duces tecum.

---

[3] As of the date of this letter, Orthogen has neither identified this unrelated, foreign, 1782 proceeding, nor provided Respondents' counsel with any documentary evidence, in support of their counsel's conclusory assertions.

[4] Should the Court act favorably on Ortgohen's request to schedule a pre-motion conference, the Caplas respectfully reserve all rights to oppose Orthogen's forthcoming motion, including, *inter alia*, all rights to raise procedural and substantive objections under Fed.R.Civ.P. 26, Fed.R.Civ.P. 45, and 28 U.S.C. § 1782, including the burdensomeness, proportionality, and relevance of the Subpoenas, and whether any of the requested discovery is even appropriate given the pending appeal before the Second Circuit and the parallel proceedings before Magistrate Judge Parker.

Morvillo Abramowitz Grand Iason & Anello P.C.

* * *

I thank the Court for its attention to this matter.

Respectfully submitted,

/s/ *Christopher B. Harwood*
Christopher B. Harwood