**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE APPLICATION OF ORTHOGEN
INTERNATIONAL GMBH,

                       Petitioner,

for an order pursuant to 28 U.S.C. § 1782 to
conduct discovery for use in a foreign
proceeding.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:24-mc-000504-VSB

# SUPPLEMENTAL DECLARATION OF CHRISTOPHER B. HARWOOD, ESQ., IN SUPPORT OF PETITIONER'S MOTION TO COMPEL AND IN OPPOSITION TO RESPONDENTS' CROSS-MOTION TO QUASH

I, Christopher B. Harwood, Esq., submit this supplemental declaration in support of Orthogen International GmbH's ("Orthogen") motion to compel and in opposition to the cross-motion by Judith Capla and Tomas Capla (together, the "Caplas") to quash the subpoenas issued to them pursuant to Judge Broderick's April 30, 2025 order (Dkt. 23). I declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am an attorney licensed to practice in the state of New York. I am a principal at the law firm Morvillo Abramowitz Grand Iason & Anello, P.C., which is counsel to Orthogen in connection with Orthogen's efforts to obtain discovery from the Caplas pursuant to 28 U.S.C. § 1782.

2. As noted in the 1782 petition submitted in this proceeding (the "Petition"), Orthogen entered into multiple license agreements with Dr. Schottenstein and Edward Capla, pursuant to which they were permitted to use Orthogen's patented Regenokine Program in exchange for their agreement to make specified royalty

1

payments to Orthogen. *See* Dkt. 7 ¶¶ 4-8. Under the license agreements, Orthogen was to be provided regular royalty reports setting forth, among other things, each Regenokine Program treatment administered to a patient within the reporting period, the amount of money invoiced to/paid by each patient in connection with the treatment(s), and the amount of money due to Orthogen in connection with each patient's treatment(s). *Id.* ¶ 11. In practice, Edward Capla was the one responsible for the royalty reports. *Id.* ¶ 13.

3. The Petition also describes information that two former employees of Dr. Douglas Schottenstein and his medical practice (collectively, the "Schottenstein Parties"), Pearl Chan and Derek Lee, conveyed to me during an interview conducted in the presence of their counsel, including that Edward Capla created monthly handwritten ledgers distinct from the royalty reports submitted to Orthogen that, among other things, allocate Regenokine earnings between Edward Capla and Dr. Schottenstein, and reflect more patients treated and higher amounts paid by the patients than is reflected in the royalty reports, and that Judith and Tomas Capla sometimes received a portion of Edward Capla's share of those amounts paid. *See* Dkt. 6 ¶¶ 16-17, 19.

4. Through their counsel, Ms. Chan and Mr. Lee subsequently provided to me documents corroborating their statements, including redacted handwritten ledgers for the following months seven months: October 2017, January 2018, March 2018, February 2019, March 2019, June 2019, and August 2019.[1] *See id.* ¶¶ 20-25 & Exs.

---

[1] Edward Capla and his wife, Yolanda Capla, did not produce any handwritten ledgers in response to 1782 subpoenas issued to them in a related 1782 proceeding directed at them in Florida (the "Florida 1782"). Nor did they produce documents reflecting payments to Judith or Tomas Capla out of Edward Capla's share of the Regenokine earnings. The Florida 1782 is *In re Orthogen Int'l GmbH*, No. 9:23-cv-80743.

I-O. The referenced ledgers reflect that, depending on the time period, Edward Capla and Dr. Schottenstein split Regenokine profits between them either 60/40% (with Edward Capla receiving 60% and Dr. Schottenstein 40%) or 50/50%. *See, e.g., id.* Ex. J (reflecting a 60/40% split in January 2018); Ex. N (reflecting a 50/50% split in June 2019).

5. Two of the referenced ledgers, for January 2018 and March 2018, reflect that Judith Capla received approximately one-third of the Regenokine earnings that had been allocated to Edward Capla. *See id.* ¶¶ 25-27.

6. To facilitate additional document productions from Ms. Chan and Mr. Lee, Orthogen filed a 1782 petition in Texas directed at them in June 2024 (the "Texas 1782").[2] *Id.* ¶ 30. That petition was granted in July 2024, and Ms. Chan and Mr. Lee produced approximately 100 documents, *see id.* ¶¶ 31-32, before the Schottenstein Parties filed motions challenging the Texas 1782 petition, which await resolution, *see* Dkt. 5 at 6. Ms. Chan and Mr. Lee have paused their document productions pending resolution of the Schottenstein Parties' motions challenging the Texas 1782.

7. The additional documents produced in the Texas 1782 include: (i) unredacted versions of the seven handwritten ledgers originally provided by Ms. Chan and Mr. Lee; (ii) unredacted versions of ledgers for additional months (some of these ledgers are handwritten and some are typed); (iii) three invoices from NY Spine to specific patients in connection with Regenokine treatments (two of which show that the

---

[2] The Texas 1782 is *In re Application of Orthogen International GMBH*, No. 5:24-mc-687-OLG.

3

patients were invoiced substantially more than what was reported to Orthogen in the corresponding royalty reports, and one of which reflects an invoice to a patient who does not appear in the corresponding royalty report); (iv) checks written by specific patients to NY Spine in connection with Regenokine treatments, many of which pertain to patients and treatments that do not appear in the corresponding royalty reports, and some of which pertain to patients and treatments that do appear in the corresponding royalty reports, but for which the reported amounts paid by the patients were significantly understated; and (v) four sets of checks for four different months issued to Judith Capla, Tomas Capla, and Edward Capla (with the checks to Edward Capla being issued to his entity, Molecular Cell LLC), and one set of checks for a different month issued to Judith Capla and Edward Capla. The checks range in amounts from $27,844.39 to $125,008.13.

8. Two of the new ledgers reflect diversions of Edward Capla's earnings to his parents. For example, one of the new ledgers (from June 2019) reflects Edward Capla's share of Regenokine earnings as approximately $261,260, and of that amount, approximately $160,000 as being paid collectively to Judith and Tomas Capla (approximately 61% of Edward Capla's allocated earnings).

9. Similarly, a set of checks from May 2019 shows that, out of approximately $255,000 in Regenokine earnings paid to Judith, Tomas, and Edward Capla (the latter through Molecular Cell LLC), approximately $77,504 (30%) went to Molecular Cell LLC, approximately $125,008 (49%) went to Judith Capla, and approximately $52,503 (21%) to Tomas Capla.

10. Across the four sets of checks issued to Judith Capla, Tomas Capla, and Edwad

Capla, Judith Capla received between approximately 31% and 49% of Edward Capla's Regenokine earnings while Tomas Capla received between approximately 20 and 25%. For the one set of checks issued to Judith Capla and Edward Capla, Judith Capla received 50% of Edward Capla's Regenokine earnings.

11. The checks and ledgers suggest that Judith Capla's estimate in her responses and objections to the 1782 Subpoena issued to her that she was paid approximately $200,000 per year from 2015-2020 for her assistance with Regenokine treatments may significantly understate the amount she received. For example, for the 12-month period from September 2018 to August 2019, Ms. Chan and Mr. Lee produced four checks issued to Judith Capla (dated September 2018, November 2018, January 2019, and May 2019) totaling $231,062.73, plus a ledger Orthogen understands was prepared by Edward Capla for June 2019 reflecting a payment to Judith Capla of another $92,191.24. For just those five months, Judith Capla apparently received $323,253.97, meaning that, if extrapolated over 12 months, she would have received closer to $775,000.[3]

---

[3] Dividing the $323,253.97 figure by five yields an average of $64,650.79 in monthly compensation for Judith Capla. Multiplying $64,650.79 by 12 gives $775,809.48. The checks and ledgers Orthogen has received to date reflect payments to Judith Capla in ten months, and the average of the monthly payments across the ten months is $62,081.57.

12. Orthogen has obtained information to date reflecting significant amounts of Regenokine profits that were paid directly to Edward Capla, but it does not know the amount of the additional profits that were allocated to him, but diverted to his parents (other than as reflected in the documents referenced herein).

Dated: September 19, 2025

    New York, NY

_____
Christopher B. Harwood