**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
In re Application of Orthogen International
GmbH                                                                                              **24-MC-504 (VSB)(KHP)**
                                  Petitioner,                                 **ORDER**

for an order pursuant to 28 U.S.C. § 1782 to
conduct discovery for use in a foreign
proceeding.
----------------------------------------------------------------X

**HON. KATHARINE H. PARKER, United States Magistrate Judge:**

      Presently before the Court are a motion to quash subpoenas issued pursuant to 28 U.S.C. § 1782, filed by Respondents, Drs. Judith and Tomas Capla, and Petitioner Orthogen International GmbH ("Orthogen")'s motion to compel. (ECF Nos. 31, 36.)  For the reasons discussed below, the Caplas' motion is DENIED and Orthogen's motion is GRANTED.

**BACKGROUND**

      On April 30, 2025, the Honorable Vernon S. Broderick issued an Opinion and Order granting Orthogen permission to serve subpoenas for certain records from Dr. Judith Capla and Dr. Tomas Capla (together, the "Caplas"), records it intends to use in a contemplated action in Germany. (ECF No. 23.)  The Caplas did not oppose the application.  However, Dr. Douglas Schottenstein and Schottenstein Pain & Neuro, PLLC d/b/a NY Spine ("NY Spine"), moved to intervene in the action to oppose the discovery and assert counterclaims against Orthogen. Judge Broderick denied the motion to intervene and, consequently, dismissed the proposed counterclaims.

      Familiarity with the facts is presumed. (*See* ECF No. 23.)  However, the Court summarizes certain relevant facts for context.  Orthogen, a German company, licensed its patented

1

Regenokine Program, used to treat muscle and joint pain, to Dr. Douglas Schottenstein and his New York medical practice, NY Spine, and his then partner, Edward Capla ("E. Capla"). Under the terms of the license, Orthogen received a royalty based on the number of treatments performed and the cost of the treatments. Dr. Schottenstein and E. Capla were required to provide royalty reports to Orthogen that accurately stated the number of patients they treated with Regenokine and the price charged. Under the license agreements in effect from May 2011 through May 2014, Orthogen was supposed to receive 40% of the amounts Dr. Schottenstein and E. Capla collected from the treatments. Under the license agreement in effect from June 2014 through May 2020, Orthogen received a set dollar amount for each treatment. The price per treatment in the later license agreement was based on reported treatments and earnings during the May 2011 to May 2014 period.

      Orthogen terminated the license agreement in May 2020. Dr. Schottenstein and his medical practice, E. Capla and his wife filed suit against Orthogen in New York Supreme Court asserting various claims arising out of the alleged wrongful termination of the license agreement. In the verified complaint, Dr. Schottenstein contended that more than 3,500 patients received Regenokine treatments and that he and E. Capla earned approximately $2 million from administering the treatments. It turns out, however, that the number of patients and treatments that they said they administered and resulting income earned was far in excess of what they had previously reported to Orthogen in their periodic royalty reports. This complaint, therefore, gave rise to Orthogen's claims that Dr. Schottenstein and E. Capla had violated the license agreement, misreported and understated the amounts received from providing the Regenokine treatments, thereby underpaying Orthogen what it was due under

2

the terms of the license agreement and fraudulently inducing Orthogen to enter into the second licensing agreement with an artificially reduced per treatment royalty. Orthogen later learned from two former employees of NY Spine that Dr. Schottenstein and E. Capla had two sets of accounting books for purposes of facilitating underreporting of income received from the Regenokine treatments and keeping more of the money for themselves (instead of paying the required royalties to Orthogen). The former employees also informed Orthogen that Respondents Drs. Judith and Tomas Capla sometimes received a portion of E. Capla's share of amounts paid by NY Spine patients and provided documents showing that they received about one-third of E. Capla's share of amounts paid.

Orthogen commenced this action to obtain information about the complete set of payments made to Respondents as part of its evaluation of damages to present to a German court in a contemplated proceeding against Dr. Schottenstein, NY Spine and E. Capla. It seeks (1) evidence confirming that E. Capla diverted a portion of his Regenokine profits to his parents (or others) to establish his participation in a knowing fraud (including by taking affirmative steps to conceal its proceeds), and thus his liability; and (2) evidence identifying the full amount of the profits that E. Capla diverted to his parents is necessary to calculate the full amount of the profits he received. Absent this information, Orthogen will not be able to compute its full damages. This information also can be used to calculate the approximate amount of Dr. Schottenstein's profits, which is also needed to compute Orthogen's total damages. Finally, Orthogen can use the evidence it seeks to identify specific patients whose treatments the Caplas helped administer to determine whether those patients' treatments were reported to Orthogen.

Orthogen contemplates filing a suit in Germany against Dr. Schottenstein and E. Capla for breach of contract and fraud. It has hired German counsel and gathered evidence in support of its claims, but requires additional evidence to compute its full damages, which must be presented in the complaint.

Judge Broderick evaluated the petition and determined that it met the three statutory requirements for obtaining discovery in aid of foreign litigation under 28 U.S.C. § 1782. (ECF No. 23.) Judge Broderick found that Respondents reside in this District, that the discovery was for use in the contemplated German proceeding, and that Orthogen was an interested person because it would be the plaintiff in the German action. Thus, he found that Orthogen satisfied the three statutory factors for obtaining discovery under Section 1782. (ECF No. 23)

Judge Broderick next found that the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), weighed in favor of allowing the discovery.

After the subpoenas were served, the Caplas moved to quash (ECF No. 31), and Orthogen moved to compel (ECF No. 36).

**LEGAL STANDARD**

Any discovery permitted under Section 1782 is subject to the Federal Rules of Civil Procedure. 28 U.S.C. § 1782(a). Thus, the Court looks to Federal Rule of Civil Procedure 45 when evaluating a motion to quash or compel compliance with a subpoena issued pursuant to Section 1782. *See, e.g.*, *In re Application of Gorsoan Ltd. and Gazprombank OJSC*, No. 13-mc-397 (PGG), 2014 WL 7232262, at *5, *10 (S.D.N.Y. Dec. 10, 2014).

Federal Rule of Civil Procedure 45 permits a party to command a non-party to produce documents and provide deposition testimony. *See* Fed. R. Civ. P. 45(a). Rule 45 similarly governs any motion to compel or quash. Fed. R. Civ. P. 45(d)(2)-(3). In general, the party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). The party seeking discovery bears the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case, and the burden then shifts to the party opposing discovery to show that the information sought is privileged or unduly burdensome. *Lelchook v. Lebanese Canadian Bank, SAL*, 670 F. Supp. 3d 51, 54-55 (S.D.N.Y. 2023) (Parker, M.J.); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012); *see also* Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 45(d)(3)(A)(iv).

"[R]elevance is an extremely broad concept for purposes of discovery." *Edmar Fin. Co. v. Currenex, Inc.*, 347 F.R.D. 641, 646 (S.D.N.Y. 2024) (citing *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019) (Parker, M.J.)). "Information is 'relevant' if '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401); *see MacCartney v. O'Dell*, 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018) (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2 1357, 1367 (2d Cir. 1991)) (discovery permitted "if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action").

Proportionality "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Pearlstein*, 332 F.R.D. at 121 (citing *Villella v. Chemical & Mining Co. of Chile Inc.*, No. 15-cv-2106 (ER), 2018 WL 2958361, at *8 (S.D.N.Y. June 13, 2018)).

"When evaluating undue burden, the court considers the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed." *Blake Marine Grp. LLC v. Frenkel & Co.*, No. 18-cv-10759 (AT) (KHP), 2019 WL 1723567, at *1 (S.D.N.Y. Apr. 18, 2019) (Parker, M.J.).

Motions to compel and quash are "'entrusted to the sound discretion of the . . . court.'" *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 260 (S.D.N.Y. 2024).

## DISCUSSION

1. <u>**Motion to Quash**</u>

The Caplas argue the subpoenas should be quashed for several reasons:  1) that the discovery permitted is in contravention of Federal Rule of Civil Procedure 27; 2) that the discovery does not comport with Federal Rule of Civil Procedure 26 in that it is not relevant or proportional to the needs of the contemplated German action; 3) that the contemplated German action is time-barred; 4) that the enforcement of the subpoenas should be stayed

pending an appeal in Germany; and 5) that Orthogen has filed duplicative lawsuits in violation of the claims-splitting doctrine. I address each in turn.

### A. Rule 27

Rule 27 permits a party to petition the court for permission to take a deposition of an expected adverse party. The rule sets forth specific information that must be provided in support of the petition. The purpose of the rule is to perpetuate and preserve testimony. *In re Allegretti*, 229 F.R.D. 93, 96 (S.D.N.Y. 2005). It is not used to investigate facts to decide whether to bring an action. *Id*. Thus, Rule 27 is a limited exception to the general rule that pre-suit discovery is impermissible for actions in the United States. *See Associacão dos Profissionais dos Correios v. Bank of New York Melon Corp.*, No. 22-mc-132 (RA) (KHP), 2022 WL 4955312, at *7 (S.D.N.Y. Oct. 4, 2022) (Parker, M.J.), *rep. & recommendation adopted as modified*, 2024 WL 4299019 (S.D.N.Y. Sept. 25, 2024). Rule 27(a)(2) requires a notice of authorized discovery to expected adversaries*. See, e.g., In re Hornbeam Corp.*, 2015 WL 13647606, at *5-6 (S.D.N.Y. Sept. 17, 2015) (Broderick, J.) (noting Rule 45(a)(4) requires notice). However, the Court is aware of no case applying the Rule 27 standard to pre-suit discovery obtained via Section 1782, and Respondents cite none. *See In re Hornbeam Corp.*, No. 14-cv-24887 (LL), 2018 WL 7577226, at *2 (S.D. Fla. Sept. 21, 2018) (rejecting challenge to 1782 discovery based on Rule 27 and noting "[r]espondents have not identified any case in which a court applied the Rule 27 standard for pre-suit depositions to a proceeding governed by § 1782"). Thus, Rule 27 does not operate as a bar to Section 1782 discovery that has otherwise been deemed consistent with the statute and *Intel*.

As noted above, Section 1782 contemplates that the Federal Rules of Civil Procedure govern the mechanics of discovery once subpoenas are issued. The Rules provide an easy framework for courts to evaluate relevance and proportionality; they do not operate to bar what Congress otherwise authorized (*i.e.*, that parties can obtain discovery for use in foreign proceedings and that allowance of such discovery is in the national interest insofar as it will encourage foreign countries to provide similar assistance) and that a court (in this case, Judge Broderick) found appropriate. As noted, Respondents provide no authority, nor is this Court aware of any, that would allow Rule 27 to operate to block Section 1782 discovery. Therefore, this argument is unpersuasive.

### B. Relevance and Proportionality

Respondent's argument that the discovery sought is not relevant and proportional to the needs of the anticipated German proceeding is also unavailing. While it is true the German proceeding has not yet been filed, Orthogen has provided sufficient facts about the outline of its contemplated action that allow this Court to determine what is relevant and proportional. In general, Orthogen has explained that it has only part of the information it needs to compute its full damages and that the information it seeks is necessary to complete the picture.

The subpoena seeks information about payment made or due to specific persons and entities in connection with the Regenokine Program, payments made to or owing to Orthogen in connection with this program; invoices to Regenokine Program patients; ledgers, reports or other documents concerning Regenokine Program patients and their treatments, including amounts invoiced or paid for such treatment; and representations made to Orthogen or others concerning Regenokine Program patient treatments, invoices or payments.

Dr. Judith Capla objected to the subpoena based on burden, noting the cost and burden of seeking documents for a 14-year period, nothing that they are not being reimbursed their attorneys' fees and costs, and arguing that the requests are redundant and overbroad. She says that she does not possess documents from the 2011 to 2020 period, that she did not retain information about the patients because she and her husband were merely independent contractors of Dr. Schottenstein. She also notes that she and her husband did not receive any payments from Dr. Schottenstein before 2015 and that thereafter they received checks each month in irregular, fluctuating amounts that were deposited in their bank. She states that the records are not available electronically since more than three years has passed since payments were made. She says she does not have documents reflecting communications with Orthogen because she and her husband did not have a business relationship with Orthogen; rather, they had a relationship with Dr. Schottenstein, who in turn had the contract with Orthogen. For similar reasons she says she and her husband do not have any invoices to patients, patient records, or patient payments – those would have been issued by and/or be in the possession of Dr. Schottenstein and his office.

Certainly information that Orthogen seeks to confirm that E. Capla diverted a portion of his Regenokine profits to his parents (or other family members) or to other entities (such as Molecular Cell or MJN Medical) is relevant to establishing E. Capla's methods for receiving money and any potential effort to conceal the full amount he received from the business. Such information also will help piece together the full amount paid to E. Capla (either directly or through his other entities). To the extent Orthogen understands how the proceeds from the medical procedures where split between E. Capla and Dr. Schottenstein, the information sought

also is relevant to damages as it can be used to determine amounts paid to Dr. Schottenstein. Finally, information about the specific patients who received treatments will allow Orthogen to determine whether all patients (and their payments for the treatment) were reported to Orthogen. Again, this information is relevant to damages. A protective order can protect patient privacy here. While the time period over which the records are sought is long, it is no longer than the period during with the Regenokine Program operated. And, Orthogen has explained that it requires information about the earlier period because the amounts set under the second agreement were informed by the amounts paid under the original agreement.

From a proportionality standpoint, the information sought is important to the German action. Indeed, it is critical. Orthogen has no other way of learning the full scope of its damages other than from Dr. Schottenstein, E. Capla and the Caplas. Further, the amount in controversy is high. Based on other available estimates, Orthogen extrapolates that its damages may be in the multimillions. Orthogen does not have access to information that deliberately was not submitted to it. The Caplas have not provided the estimated costs to them in searching for and providing the information. From the responses already provided, it appears the cost is not great because, apparently, they do not have a lot of information. Nevertheless, they can request information from their banks about deposits made from amounts paid by Dr. Schottenstein, which is not burdensome. In sum, the Court finds the requests are relevant and proportional to the needs of the case.

### C. Whether this Action is Time-Barred under German Law

Next, Respondents argue the German action is time-barred. This argument is not a basis to quash the subpoena. Rather, it is a merits issue that will be decided by a German court. The

court in this action is merely deciding the propriety of discovery under the Section 1782 standard. The Second Circuit has warned courts not to delve into the nuances of foreign law when adjudicating 1782 requests. *See, e.g.*, *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995) (disfavoring a battle-by-affidavit of international legal experts); *In re Mangouras*, No. 17-mc-172, 2017 WL 11511163, at *1 (S.D.N.Y. Nov. 15, 2017) (disfavoring reliance on "conflicting, self-serving and often conclusory assertions about" foreign law). Accordingly, the Court does not address the timeliness issue under German law.[1]

### D. Whether this Action Should Be Stayed

Respondents also argue that this action should be stayed pending an appeal in Germany. This argument is without merit. This court has to manage its docket independently from any action pending in Germany. Further, the pending German Proceeding concerns allegedly unlicensed treatments of Regenokine performed from June 2020 onward—it does not concern discovery regarding treatments given and payments received during the period at issue in the contemplated German action. (*See In re Orthogen*, No. 23-mc-152 (VSB) (KHP), Dkt. 52-6, at 4-5 (noting Orthogen sought information for use of licenses "since June 2020" when it first terminated the license agreement).) Thus, this action is not dependent on the pending German Proceeding. According, Respondents' suggestion that this action should be stayed is without merit.

---

[1] The Court notes that Orthogen has supplied information from its expert in German law (Dr. Kruger) setting forth why the Contemplated German Proceeding Claims are not time-barred, including because of the tolling provisions found in Section 199 of the German Civil Code. (*See* ECF No. 37, at 25.) Considering Respondents' rebuttal to Dr. Kruger would result in the exact sort of battle-by-affidavit disfavored by the Second Circuit. Hence, the Court does not consider any expert affidavits on this motion.

### E. *Claims-Splitting*

Respondents' final argument is that Orthogen has engaged in impermissible claims splitting because this action is its second Section 1782 petition before this Court. The first action, *In re Orthogen Int'l GmbH*, No. 1:23-mc-152 (VSB) (KHP), involves substantially identical discovery requests but is directed at Dr. Schottenstein and his medical practice.

The claim-splitting doctrine "has been described as a "well-established rule that a plaintiff cannot avoid the effect of res judicata by 'splitting' his claim into various suits, based on different legal theories." *Waldman v. Village of Kiryas Joel*, 207 F. 3d 105, 110 (2d Cir. 2000). This doctrine bars plaintiffs from pursuing multiple federal suits based on the same operative facts, chiefly as part of the federal courts' general power to manage their dockets and to avoid duplicative federal litigation. *Kanciper v. Suffolk Cnty. Soc. for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 92-93 (2d Cir. 2013) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)). "Rather, a party must bring in one action all legal theories arising out of the same transaction or series of transactions." *Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002).

The doctrine is inapplicable to these discovery motions. Here, the claims being pursued by Orthogen will be pursued in the contemplated German proceeding. It is not unusual for a party to seek discovery from multiple third parties. Indeed, that is the purpose of Rule 45. Respondents cite no case law to the contrary. Moreover, while the documents sought in the two Section 1782 actions initiated by Orthogen may go to proving the same issue, the documents are nevertheless different and held by different respondents, so there is no

duplication of the two petitions. Rather, they are simply related cases. Thus, this argument is without merit.

## II. **Motion to Compel**

Dr. Judith Capla's responses and objections to the subpoena state that she does not have any responsive documents. However, Orthogen argues that she has understated the amounts she received in connection with the Regenokine program and can, at minimum, testify to her understanding of these amounts. Further, she concedes she assisted with treatments from 2011 to 2020, when Schottenstein was treating patients with Regenokine. In particular, she estimated that she received approximately $200,000 per year from 2015-2020. However, according to Orthogen, E. Capla's handwritten ledgers and checks made out to his mother obtained in a separate Section 1782 action showed that the amounts paid to her were higher. Orthogen speculates, giving Dr. Judith Capla the benefit of the doubt, that she perhaps was discounting amounts paid to her but allocated to her son. But documentation and testimony related to these payments may aid in ascertaining exactly what was paid, when, and to whom, and is relevant for that reason. Further, Orthogen has provided specific examples of amounts from E. Capla's ledger indicating more was received. This information suggests Dr. Capla did not conduct an appropriate search for documents. Orthogen further states that multiple patients treated with Regenokine were professional athletes or otherwise well-known such that Dr. Capla should remember at least some of the patient's names. This information would help Orthogen piece together which patients' payment were reported or underreported.

Based on the Caplas' responses, it is clear they have not provided all the information they could in response to the subpoenas. It is not clear that they have actually asked their bank

or their accountant for information about deposits made or earnings from Dr. Schottenstein and his medical practice. Generally, in New York, doctors must keep medical records for six years. 8 N.Y.C.R.R. § 29.2(a)(3). And, generally, banks must keep records of customer accounts for at least five years. *See, e.g.*, 31 C.F.R. §§ 1010.410, 1010.430(d). The Caplas have not provided information about their bank's identity, the account(s) into which they received payments from Dr. Schottenstein and/or his medical group or whether any such account is still open.

Accordingly, within 30 days the Caplas shall provide the names of all patients they treated with Regenokine that they can recall—including names they can recall from reviewing paper records subject to production in this action—and the names of the banking institutions they used for purposes of depositing/receiving payments from Dr. Schottenstein or his practice and whether the accounts used are still open. If the bank accounts are not still open, the Caplas shall provide the month and date that they closed the accounts.

## CONCLUSION

For the reasons set forth above, the motion to quash is denied, and the motion to compel is granted. The Caplas shall submit a letter to this Court within 30 days of this Order confirming that they have complied with the Court's orders set forth above.

SO ORDERED.

DATED:   New York, New York
         February 5, 2026

*Katharine H. Parker*
KATHARINE H. PARKER
United States Magistrate Judge